**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

|  |  |  |
|---|---|---|
| **DAWN M. BROWN** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD-10-1238** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Dawn M. Brown, ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's claim for a period of Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 15) and Commissioner's Motion for Summary Judgment ("Commissioner's Motion") (ECF No. 35). The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby DENIES Plaintiff's Motion, and GRANTS Commissioner's Motion.

## PROCEDURAL BACKGROUND

Plaintiff filed for disability benefits on August 22, 2006. R. 58. The Commissioner denied Plaintiff's claim on first review on February 22, 2007, R. 61-63, and on reconsideration on July 25, 2007, R. 66-67. A hearing was held before an Administrative Law Judge ("ALJ") on

August 7, 2008.  R. 25-57.  On September 17, 2008, the ALJ issued a written decision

concluding that Plaintiff was not disabled under the Social Security Act.  R. 9-24.

The ALJ evaluated Plaintiff's claim using the five-step sequential process set forth in 20

C.F.R. § 416.920 (2008), and further explained below.  At the first step, the ALJ determined that

Plaintiff has not engaged in substantial gainful activity since August 15, 2006, the alleged onset

date.  R. 11.  At the second step, the ALJ determined that Plaintiff has the following severe

impairments:  bipolar disorder, schizoaffective disorder, anxiety disorder, hepatitis C,

fibromyalgia, diabetes mellitus, and obesity.  *Id*.  The ALJ found that Plaintiff's

gastroesophageal reflux disease, high cholesterol, and polycythemia were not severe

impairments.  R. 12.  At the third step, the ALJ determined that Plaintiff "does not have an

impairment or combination of impairments that meets or medically equals" a listing.  R. 13.  At

the fourth step, the ALJ determined that Plaintiff retained the residual functional capacity to

perform light work, except that she is limited to standing for thirty minutes and sitting for thirty

minutes consistently on an alternate basis; would need to avoid heights, hazardous machinery,

ropes, ladders, scaffolds, and stairs; could perform no prolonged balancing, climbing, or

stooping; and could only perform simple, routine, unskilled jobs that were low stress, low

concentration, low memory but could attend to tasks and complete schedules.  R. 15-22.  The

ALJ found that Plaintiff is unable to perform any of her past relevant work as a data entry clerk

or office clerk.  R. 22-23.  At the fifth step, the ALJ determined that considering Plaintiff's

residual functional capacity, age, education, and work experience, "there are jobs that exist in

significant numbers in the national economy that the claimant can perform," including office

helper, mail clerk, dispatcher, food and beverage order clerk, and addresser.  R. 23.  As a result,

the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from the alleged onset date of August 15, 2006, through the date of the decision.  R. 24.

Plaintiff subsequently requested review of the ALJ's decision by the Appeals Council.  R. 92-95.  The Appeals Council denied Plaintiff's request on March 22, 2010, making the ALJ's decision final and appealable.  R. 1-3.

## STANDARD OF REVIEW

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ "with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2006).  The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); s*ee also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted); *see also Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his

decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456; *Schweiker*, 795 F.2d at 345. The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d at 1456. If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is deemed legally disabled if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a) (2008). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If she is doing such activity, she is not disabled.

2) If she is not doing such activity, determine whether she has a "severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 416.920(a)(4)(ii). If she does not have such impairment or combination of impairments, she is not disabled.

3) If she does have such impairment or combination of impairments, determine whether she has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 416.920(a)(4)(iii). If she does have such impairment, she is disabled.

4) If she does not, considering her residual functional capacity, determine whether she can do her "past relevant work." 20 C.F.R. § 416.920(a)(4)(iv). If she can do such work, she is not disabled.

5) If she cannot do such work, considering her residual functional capacity, age, education, and work experience, determine whether she can perform other work. 20 C.F.R. § 416.920(a)(4)(v). If she can perform other work, she is not disabled, and if she cannot, she is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Defendant has the burden to prove that Plaintiff is not disabled at step five. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

## ANALYSIS

On appeal, Plaintiff argues that the Court should reverse the Commissioner's decision or remand the case for additional consideration and evaluation of Plaintiff's condition for the following three reasons:

1) The ALJ failed to give proper weight to the Fibromyalgia Syndrome Medical Assessment Form completed by Plaintiff's treating physician, Dr. Ciganek;

2) The ALJ erred by failing to include Plaintiff's Hepatitis C, diabetes mellitus, and obesity in the hypothetical question posed to the vocational expert; and

3) The ALJ's residual functional capacity assessment was not supported by substantial evidence because the ALJ failed to discuss the vocational expert's response to questions posed by Plaintiff at the hearing.

For the reasons set forth below, the decision of the ALJ is affirmed and Plaintiff's Motion is denied.

## I. The ALJ's Weighing Of The Functional Limitations Assigned By Dr. Ciganek On The Fibromyalgia Syndrome Medical Assessment Form Was Supported By Substantial Evidence.

Plaintiff argues that the ALJ improperly assigned little weight to the Fibromyalgia Syndrome Medical Assessment Form completed by Dr. Eric Ciganek on December 19, 2007. Pl.'s Br. 16. Plaintiff argues that the ALJ should have assigned great weight to the opinion of

Dr. Ciganek because he was her treating physician and the ALJ lacked persuasive contradictory evidence. Pl.'s Br. 17-18. Plaintiff also argues that the ALJ improperly discredited the diagnosis of fibromyalgia made by another physician, Dr. Mallangin,[1] and adopted by Dr. Ciganek on the form. Pl.'s Br. 18-19. Plaintiff argues that the ALJ improperly assigned greater weight to the opinion of Dr. Christian Jensen, a non-treating physician who examined her. Pl.'s Br. 20-21. Dr. Jensen found that there was no objective evidence of physical impairment and no manifestations of pain during the examination. R. 303-06.

Plaintiff relies on a defunct legal standard in arguing that Dr. Ciganek's opinions should be assigned great weight. Plaintiff cites the old Fourth Circuit "treating physician rule" for the proposition that a "treating physician must be given great weight and may be disregarded or ignored only if there is persuasive contradictory evidence." Pl.'s Br. 17 (citing *Coffman v. Bowen*, 829 F.2d 514 (4th Cir. 1987); *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986)). This standard was superseded by a new Social Security Administration regulation in 1991. *See* SSR 96-2P, 1996 WL 374188, at *1 (July 2, 1996); *Winford v. Chater*, 917 F. Supp. 398, 400 (E.D. Va. 1996). The current legal standard is contained in 20 C.F.R. §§ 404.1527, 416.927 (2008). This regulation provides detailed guidance for weighing medical opinions, first stating when a treating physician's opinions are to be given controlling weight:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

---

[1] This doctor's name is spelled MacLauglin in Plaintiff's brief. Pl.'s Br. 19. For the sake of consistency, the Court adopts the spelling used by the ALJ.

inconsistent with the other substantial evidence in your case
record, we will give it controlling weight.

20 C.F.R. § 416.927(d)(2) (2008).  If the Commissioner finds that the treating physician's

opinion is not entitled to controlling weight, it must apply the following factors to determine its

proper weight:  (1) the length of the treatment relationship and the frequency of examination; (2)

the nature and extent of the treatment relationship; (3) the supportability of the opinion with

relevant medical evidence; (4) its consistency with the record as a whole; and (5) whether it is

the opinion of a specialist regarding his or her area of specialty.  20 C.F.R. § 416.927(d)(2)-(6)

(2008).  Therefore, while there is a general preference for the opinions of treating physicians, an

unsupported or contradicted opinion may or may not be entitled to great weight or deference.

*See* SSR 96-6P, 1996 WL 374180, at *3 (July 2, 1996); SSR 96-2P, 1996 WL 374188, at *4

(July 2, 1996); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

      In applying the factors, the length and extent of the treatment relationships are

particularly significant.  The Social Security Administration recognizes that a physician with an

ongoing and intensive treating relationship is likely to understand a patient's condition in a

manner that cannot be replicated by a one-time evaluation or a case record review.  *See* 20

C.F.R. § 416.927(d)(2)(i) (2008)  ("Generally, the longer a treating source has treated you and

the more times you have been seen by a treating source, the more weight we will give to the

source's medical opinion.").  However, the opinions of a physician who has had only a sporadic

or superficial treating relationship with a patient might not be entitled to great weight, depending

on the application of the other factors.  *See Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164

(4th Cir. 2011) (finding it appropriate to discount the weight assigned to the opinion of a treating

physician who had seen the patient infrequently and not at all in the six months prior to

completing an assessment); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (affirming ALJ's

decision based on one-year delay between treating physician's treatment and diagnosis and lack of supporting evidence).

Before applying the § 416.927(d) factors, it is important to clarify what the ALJ actually decided regarding Dr. Ciganek's fibromyalgia assessment form. The ALJ did not fully discredit Plaintiff's diagnosis of fibromyalgia and accepted that it was one of her severe impairments. R. 12-13. Rather, the ALJ rejected certain specific conclusions of Dr. Ciganek regarding Plaintiff's residual functional capacity ("RFC"), namely that she could sit, stand, and walk for less than two hours in an eight hour work day and that she would likely miss more than four days of work a month due to her impairments. R. 19. Such conclusions regarding a claimant's RFC are not medical opinions but rather administrative findings that are dispositive of the case, and are therefore reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2) (2008). Furthermore, the ALJ in fact adopted several of Dr. Ciganek's conclusions in formulating Plaintiff's RFC. Dr. Ciganek found that Plaintiff's symptoms would only "occasionally" interfere with her ability to perform simple work tasks, that she could sit for forty-five minutes to an hour and stand for thirty minutes at a time, that she would be able to perform routine repetitive tasks at a consistent pace, and that she "rarely" could twist or stoop. R. 336-38. The RFC assessment reached by the ALJ either incorporated or was consistent with each of these opinions.

The ALJ had sufficient evidence for his decision to assign little weight to the parts of Dr. Ciganek's assessment form involving the total time that Plaintiff can sit or stand and the number of days she would likely miss in a month. First, Dr. Ciganek's fibromyalgia assessment form was not entitled to controlling weight because it was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.927(d)(2) (2008). As noted by the ALJ, neither the assessment form nor Dr. Ciganek's other records describe medical

or diagnostic testing he used to reach his conclusions.  R. 19, 335-46.  Second, it is not entitled to controlling weight because it is inconsistent with other substantial medical evidence in the file, such as the examination by Dr. Jensen which found no objective evidence of physical impairment.  R. 19, 306.

Since Dr. Ciganek's conclusion is not entitled to controlling weight, the ALJ was required to apply the factors from 20 C.F.R. § 416.927(d) to determine its proper weight.  A formulaic application is not necessary so long as the ALJ is aware of and considers all of the factors.  *Hooks v. Astrue*, No. 11-423, 2012 WL 2873944, at *8-9 (D. Md. July 12, 2012).  As to factors (3), (4), and (5) the ALJ discussed Dr. Ciganek's failure to support his conclusions with medical examinations and clinical findings, their inconsistency with the conclusions of other examining sources such as Dr. Jensen and Dr. Linda Schuerholz, and Dr. Ciganek's lack of specialization in the relevant areas.  R. 19-20.

The ALJ did not explicitly discuss factors (1) and (2) regarding the length, frequency, and extent of the treatment relationship with Dr. Ciganek.  However, these factors are perhaps the most persuasive in assigning little weight to the fibromyalgia assessment form completed by Dr. Ciganek.  At the time he filled out the form, Dr. Ciganek had only treated Plaintiff on one occasion about two months prior.  R. 335.  Given that Dr. Ciganek's conclusions regarding Plaintiff's RFC were not based on long, frequent, or extensive treating relationship, the ALJ had substantial evidence for assigning them less weight than those of Dr. Jensen.  *Compare Adkins v. Astrue*, No. 10-887, 2012 WL 458796, at *2 (D. Md. Feb. 10, 2012) (reversing an ALJ who rejected the opinion of a physician who had treated the claimant for mental and physical ailments over a five-year period); *Wilson v. Astrue*, No. 10-723, 2011 WL 5515508, at *2 (D. Md. Nov. 3, 2011)  (reversing an ALJ who rejected the opinion of a physician who had treated the claimant

for three years and "personally diagnosed, treated and prescribed medications" for his various ailments).  Although Dr. Jensen was not a treating physician, he provided more details than Dr. Ciganek regarding the physical examination he performed and which medical records he reviewed.  R. 303-06.  Aside from briefly mentioning a fibromyalgia diagnosis made by another doctor, [2] Dr. Ciganek does not indicate whether he reviewed any of Plaintiff's past treatment records or merely relied on Plaintiff's self-reported symptoms.  R. 335-39.  While the ALJ should have discussed the length, frequency, and extent of the treating relationship in more detail, it makes little sense to remand for consideration of factors that weigh so heavily in favor of the conclusion that the ALJ reached.

## II.  The ALJ Was Not Required To Specifically Mention Plaintiff's Hepatitis C, Diabetes Mellitus, and Obesity In The Hypothetical Question Posed To The Vocational Expert.

Plaintiff argues that the hypothetical question the ALJ posed to the vocational expert was flawed because it failed to specifically reference Plaintiff's severe impairments of hepatitis C, diabetes mellitus, and obesity.  Pl.'s Br. 22-25.  The Commissioner employs vocational experts to offer evidence as to whether a claimant possesses the residual functional capacity to meet the demands of past relevant work or adjust to other existing work.  20 C.F.R. § 416.960(b)-(c) (2008).  "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) (quoting *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)).  The ALJ has great latitude in posing hypothetical questions, and a question is "unimpeachable if

---

[2] Plaintiff argues that it was improper for the ALJ not to defer to the diagnosis of fibromyalgia made by Dr. Mallangin and referenced by Dr. Ciganek.  Pl.'s Br. 18-19.  However, the regulations specifically require the ALJ to examine the supportability of a treating physician's opinion, and Dr. Mallangin's opinion was not supported by medical evidence or testing in the record.  20 C.F.R. § 416.927(d)(3) (2008).  Therefore, the ALJ did not err by assigning less weight to this diagnosis.

it adequately reflects a residual functional capacity for which the ALJ had sufficient evidence."
*Fisher v. Barnhart*, 181 F. App'x 359, 364 (4th Cir. 2006) (quoting *Johnson v. Barnhart*, 434
F.3d 650, 659 (4th Cir. 2005)) (internal quotation marks omitted); *Koonce v. Apfel*, No. 98-1144,
1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999).

When formulating the hypothetical question, the ALJ identifies the "physical and mental
limitations imposed by the claimant's medical impairment(s)."  20 C.F.R. § 416.960(b)(2); *see
also Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003).  As has been addressed by other
district courts in the Fourth Circuit, the hypothetical question need not reference each of the
claimant's impairments or diagnoses by name so long as it adequately reflects the limitations
caused by those impairments.  *See Chambers v. Astrue*, No. 08-806, 2012 WL 4511051, at *2
(M.D.N.C. Sept. 28, 2012) ("The hypothetical question need not frame the claimant's
impairments in the specific diagnostic terms used in medical reports, but instead should capture
the concrete consequences of those impairments.") (quoting *Lacroix v. Barnhart*, 465 F.3d 881,
889 (8th Cir.2006)); *Harris v. Barnhart*, No. 05-65, 2006 WL 1442792, at *11 (W.D. Va. May
25, 2006) (stating that the hypothetical question "need not use specific diagnostic terms")
(internal quotations omitted); *Osgar v. Barnhart*, No. 02-2552-18B, 2004 WL 3751471, at *4
(D.S.C. Mar. 29, 2004) (same), *aff'd*, 117 F. App'x 896 (4th Cir. 2005).  It is the ALJ's role to
translate the claimant's medical impairments into functional limitations from which the
vocational expert can determine whether work is available.  *See Smith v. Sullivan*, 733 F. Supp.
450, 452 (D.D.C. 1990) ("[A]s a practical matter, a recitation of the claimant's various physical
impairments is not going to be nearly as useful to the vocational expert as the ALJ's specific
finding of what are the claimant's actual disabling limitations arising from the physical
impairments.").

The ALJ did not err by failing to mention Plaintiff's hepatitis C, diabetes mellitus, and obesity in the hypothetical question.  The ALJ considered these impairments when formulating the physical limitations which he included in the hypothetical question.  In assigning the limitations of light work; alternating thirty-minute periods of sitting and standing; avoiding exposure to hazards, heights, ropes, ladders, scaffolds, and stairs; and avoiding prolonged balancing, climbing, and stooping, the ALJ explicitly considered the effects of Plaintiff's obesity.  R. 19-20.  The ALJ also considered the fatigue and pain caused by Plaintiff's hepatitis C.  R. 16.  The ALJ only briefly mentioned Plaintiff's diabetes in formulating her RFC, R. 19, but the record reflects that her diabetes was controlled by diet.  R. 359.  Plaintiff does not identify any additional functional limitations resulting from the above conditions, and the limitations that the ALJ assigned were based on substantial evidence.

Plaintiff argues that the potentially severe mental and physical side effects of the interferon treatment she receives for hepatitis C cause additional limitations which the ALJ failed to consider.  Dr. Michael Fisher expressed concerns on February 15, 2008, that the interferon treatment could exacerbate Plaintiff's mental health issues.  Pl.'s Br. 25; R. 359.  However, on April 11, 2008, Dr. Ciganek found that Plaintiff's bipolar disorder was in full remission, and in May recommended that she be placed on interferon treatment.  R. 380-82.  On July 2, 2008, after being placed on interferon, Plaintiff's only complaint to Dr. Ciganek was that she felt dizziness, which he characterized as "fairly mild in severity."  R. 383.  The ALJ reviewed these records and concluded that they did not support the severity of Plaintiff's alleged side effects from interferon.  R. 17.  Nonetheless, the ALJ asked Plaintiff at the hearing to report her side effects to the vocational expert, to whom she stated "I sleep a lot, I get nauseated, I have cold sweats, [and] I have headaches."  R. 49.  The ALJ then incorporated these side effects into the hypothetical

question.  R. 50.  While Plaintiff argues that this approach was flawed, the record reflects that the

ALJ had substantial evidence for the functional limitations that he included in the hypothetical

question.

**III.  The ALJ's Residual Functional Capacity Finding Was Supported By Substantial Evidence Although It Did Not Adopt Hypothetical Questions Posed By Plaintiff To The Vocational Expert.**

Plaintiff's final argument is that the residual functional capacity determination was not

supported by substantial evidence because the ALJ failed to properly address two hypothetical

questions that Plaintiff posed to the vocational expert at the hearing.  Pl.'s Br. 26-28.

The first question involved a series of functional limitations assigned on a Psychiatric

Review Technique form completed by Dr. Walklett, a non-examining state agency consultative

expert.  R. 317-20.  Dr. Walklett categorized Plaintiff as moderately limited in ten categories of

mental function.  R. 317-18.  At the hearing, Plaintiff's attorney asked "hypothetically speaking,

if each of these categories reduced the work productivity by two percent, would the combination

. . . allow for any gainful employment?"  R. 52.  The vocational expert responded that she could

not answer the question without knowing which of the ten categories apply to skilled work, since

the ALJ's hypothetical already precluded skilled work.  R. 52-53.  Plaintiff's attorney then

simplified the question, by asking the expert to assume that there was a twenty percent reduction

in work activity.  R. 53.  There was no basis in the record for the quantitative value that Plaintiff

assigned to her limitations.  The expert answered that there would be no work at a twenty percent

reduction in activity.  *Id.*  Although the ALJ did not specifically address this hypothetical

question in his opinion, he did properly evaluate Dr. Walklett's report.  R. 22.  The ALJ assigned

only some weight to Dr. Walklett, adopting some of his findings but rejecting others in favor of

Ms. Lillian Sheehan, Plaintiff's treating therapist, and Dr. Schuerholz, a state agency examining

consultant. R. 22. Therefore, the ALJ was not required to adopt Dr. Walklett's findings, much less the speculative values that Plaintiff assigned to them.

Second, Plaintiff asked the vocational expert if a person with a Global Assessment of Functioning ("GAF")[3] score of thirty to thirty-eight would be precluded from working. R. 53-54. Plaintiff referenced these scores because they were assigned to her during two mental-health hospitalizations in 2005 and 2006. R. 199, 209. On August 6, 2005, Plaintiff admitted herself to Anne Arundel Medical Center for emergency psychiatric services after an episode of panic and delusions, and was diagnosed with anxiety disorder and mood disorder. R. 198. On May 31, 2006, Plaintiff was involuntarily hospitalized at Dorchester General Hospital and diagnosed with bipolar disorder after another episode in which she experienced delusions, hallucinations, and erratic behavior. R. 206-09. However, over the subsequent years Plaintiff received intensive mental health treatment and her condition improved overall. *See* R. 347-52 (physician progress notes from April to September 2007), 369-85 (physician progress notes from January to July 2008). She attended therapy on a consistent basis. R. 283-302. In July of 2007, the state consultative psychiatric examiner Dr. Schuerholz assigned her a GAF of fifty-five. R. 312. The ALJ discussed Plaintiff's history of psychiatric hospitalizations and subsequent mental condition in determining her RFC. R. 11-12, 16, 18, 20-22. There was substantial evidence for the ALJ to conclude that Plaintiff's level of mental functioning at her hospitalizations was not indicative of her current functioning. Even though the ALJ did not specifically reference the GAF scores, he properly discussed the underlying hospital records, and his conclusion was supported by substantial evidence. *See Melgarejo v. Astrue*, No. 08-3140, 2009 WL 5030706, at *4 (D. Md. Dec. 15, 2009) ("[T]he GAF is not determinative of disability, and the ALJ is not required to

---

[3] The Global Assessment of Functioning Scale is a numerical scale placing psychological, social, and occupational functioning on a hypothetical continuum of mental health or illness. It is explained in the American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders, 34 (4th ed. Text Revision 2000).

discuss every piece of evidence in the record.") (citing *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n. 10 (4th Cir.1999)).  Therefore, remand for discussion of the GAF scores is not warranted.

## CONCLUSION

Based on the foregoing, the Court DENIES Plaintiff's Motion and GRANTS Commissioner's Motion.


March 8, 2013                                    _____/s/_____
                                                         Charles B. Day
                                                         United States Magistrate Judge

CBD/ISA